

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2009

# Dany Dorvilien v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2114

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Dany Dorvilien v. Atty Gen USA" (2009). *2009 Decisions*. Paper 1662.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1662

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2114
_____

DANY DORVILIEN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(Agency No. A79-465-974)
Immigration Judge:  Honorable Miriam K. Mills
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 25, 2009

Before: RENDELL, GREENBERG and VAN ANTWERPEN, Circuit Judges

(Filed: March 27, 2009)
_____

OPINION OF THE COURT
_____

PER CURIAM

Dany Dorvilien, a native and citizen of Haiti, entered the United States through the

United States Virgin Islands in 2001.  In 2006, the Government charged him with

removability for being present without being admitted or paroled after inspection.

Dorvilien conceded the charge, but sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

Dorvilien first applied for asylum in 2001. In the statement attached to his I-589 application, he contended that he left Haiti because a business dispute, with a man named Henri Louis and relating to his father's construction business, turned violent. In January 2006, Dorvilien filed a supplemental declaration, in which he claimed that a man named Pierre refused to pay Dorvilien's mother for goods he took on credit. He stated that Pierre threatened Dorvilien with violence when he told Pierre to repay his mother; that Pierre threatened his mother, his family, and him because his mother voted for Aristide and she and her family support Aristide while Pierre is a member of the Opposition; and that Pierre did not appear in court when Dorvilien's mother filed a criminal complaint against him. He also noted that his mother's friend, Lou, got in an argument with Pierre when he sought to recover the funds, and was found with a fatal gunshot wound shortly thereafter.

In October 2006, Dorvilien submitted another affidavit, in which he described his support of Aristide and the Lavalas party, including his role as a *mandataire* in monitoring a local election. He stated that because of his well-known political affiliation, he and his family had been threatened by a man named Pierre, a leader of a gang opposed to Aristide and the Lavalas party. He noted that Pierre is believed to have killed or directed the killing of one of Dorvilien's family friends, a man named Lou. In February

2

2007, Dorvilien submitted another I-589 application, essentially repeating what he included in the October 2006 supplement.

After a hearing, the Immigration Judge ("IJ") made an adverse credibility finding and denied Dorvilien's application for relief. Dorvilien appealed to the Board of Immigration Appeals ("BIA"). The BIA affirmed the IJ's decision and dismissed the appeal. Dorvilien presents a petition for review.

We have jurisdiction over Dorvilien's petition pursuant to 8 U.S.C. § 1252(a). We review the BIA's decision where the BIA has rendered its own decision, see Xie v. Ashcroft, 359 F.3d 239, 240 (3d Cir. 2004), as the Government points out. However, where, as here, the BIA relies substantially on the IJ's adverse credibility finding, we also review the IJ's decision. See id. at 242. We consider questions of law de novo. See Gerbier v. Holmes, 280 F.3d 297, 302 n.2 (3d Cir. 2001). We review factual findings, including adverse credibility determinations, for substantial evidence. See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005). An adverse credibility finding must be afforded substantial deference, so long as the finding is supported by sufficient, cogent reasons. See id. at 434. The finding must be upheld unless any reasonable adjudicator would be compelled to conclude to the contrary. See Xie, 359 F.3d at 243.

Because there is no reason that compels a contrary conclusion, we uphold the agency's adverse credibility finding in this case. At his hearing, Dorvilien testified that a man named Pierre, a gangster who was a member of the Opposition, refused to pay back a

3

loan from Dorvilien's mother. Dorvilien stated that when he confronted Pierre, Pierre threatened to kill Dorvilien and his family because of Dorvilien's association with the Lavalas party, including his role as a *mandataire*. Dorvilien also testified that Lou, the family friend who was killed, had served the Lavalas party. He added that his brother also was killed in 2006. Presenting a death certificate and a photograph that his mother sent him, he stated his belief that his brother was murdered because he supported the Lavalas party, too. He acknowledged that his mother, who filed a criminal complaint against Pierre, as well as his other siblings and three of his children, remain in Haiti unharmed.

Dorvilien explained that the account about a construction business dispute in his first affidavit was not correct because a unscrupulous Haitian man prepared his application in English, which Dorvalien could not read or understand. He described how he explained the error to the asylum officer who interviewed him and presented his actual claim. His testimony was impeached by the asylum officer's notes, in which Dorvilien was reported as having fled from Haiti because of a business dispute, with a man named Henri or Pierre and relating to his father's construction business, that turned violent.

As the IJ and the BIA concluded, Dorvilien did not provide a consistent, detailed explanation about the events on which his claims for relief based. Cf. Xie, 359 F.3d at 243-46. His initial application omits the information – his support of Aristide and the Lavalas party – that is at the crux of his later application for relief. Furthermore, he did

4

not highlight his association with Aristide or the Lavalas party in his first supplement or suggest that his role as a *mandataire* prompted the gangster Pierre to refuse to repay his mother. It was not until he filed his second supplement that he explained that he was threatened by Pierre because of his political activities. Although Dorvilien offered the explanation that a dishonest preparer took advantage of him, his explanation, undermined by evidence from his asylum interview,[1] was not sufficient to resolve the material inconsistencies.[2]

The inconsistencies in the record are a sufficient basis for the adverse credibility

---

[1]Dorvilien objects to the reliance on the notes from the asylum interview, describing them as indecipherable and inadmissible hearsay whose use was fundamentally unfair. As the parties agree, the Federal Rules of Evidence do not apply in immigration proceedings; however, evidence must be probative and used in a fundamentally fair manner to satisfy concerns of due process. See Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003). The handwritten and typed evidence, which we can decipher, is relevant. Although it is hearsay, it is not the "multiple hearsay of the most troubling kind" that we have repudiated, see id. at 406, and it was used merely for impeachment purposes. Its use did not violate Dorvilien's right to due process.

[2]The adverse credibility finding meant that the IJ and the BIA rejected his testimony, including his testimony that he was an active supporter of the Lavalas party. It is disingenuous for Dorvilien to now claim that the IJ accepted his testimony about his role as a *mandataire* because of comments she made in moving his testimony along at the hearing. (Although she ultimately rejected Dorvilien's account, it is clear nonetheless that she fairly considered the evidence, contrary to Dorvilien's assertions.) Furthermore, the adverse credibility finding precluded success on Dorvilien's pattern and practice claim which was related to his role as a *mandataire* and country conditions for supporters of Aristide and the Lavalas party. Accordingly, the IJ and BIA were not obligated to separately consider the pattern and practice claim. For this reason, among others, Dorvilien cannot show prejudice to support his claim of a due process violation stemming from the IJ's passing reliance at the hearing on an Internet report of country conditions in Haiti.

determination and the rejection of Dorvilien's claims for relief.[3]  Dorvilien did not demonstrate a well-founded fear, or a clear probability, of persecution in Haiti on account of a protected ground, see 8 U.S.C. § 1101(a)(42); Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003), or that it was more likely than not that he would be tortured on return to Haiti so as to be entitled to CAT relief, see Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003).  We will deny his petition for review.[4]

---

[3]After concluding that Dorvilien was not credible, the IJ noted the lack of corroboration in the record.  The IJ stated that she expected Dorvilien's mother, who was at the center of the dispute with Pierre and who sent Dorvilien documentation of his brother's death, to have provided an affidavit to show why Dorvilien and his family may have faced a threat in Haiti.  Dorvilien stated then that he did not think to get a letter from his mother and now claims that the IJ should not have required him to provide corroborating evidence.  Under the circumstances, the corroboration requirement was reasonable.  Cf. Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001).

[4]We have considered and reject any remaining claims, including those of due process violations.  We note that the IJ's and BIA's opinions, as well as Dorvilien's many challenges to the IJ's application of legal standards, belies Dorvilien's assertion that the mechanical error that led to the omission of (a presumably boilerplate) section of the IJ's opinion deprived him of due process and a way to determine if the IJ considered and applied the correct legal principles to his case.  We also deny Dorvilien's request for oral argument.

6